396 So.2d 956 (1981)
Dalton Ray LANGFORD and Leon Edward Cole, Plaintiffs-Appellees,
v.
CALCASIEU PARISH POLICE JURY, Defendant-Appellant.
No. 7972.
Court of Appeal of Louisiana, Third Circuit.
February 20, 1981.
Rehearing Denied April 27, 1981.[*]
*957 Eugene A. Bouquet, Asst. Dist. Atty., Lake Charles, for defendant-appellant.
Scofield, Bergstedt, Gerard, Hackett & Mount, J. Michael Veron, Lake Charles, for intervenor-appellant.
Salter, Streete & Hale, Stephen R. Streete, Lake Charles, for plaintiffs-appellees.
Before CULPEPPER, DOMENGEAUX, FORET, SWIFT and DOUCET, JJ.
SWIFT, Judge.
On November 13, 1978, the plaintiffs acquired the ownership of a five-acre tract of land in Calcasieu Parish, Louisiana. They purchased five more acres contiguous to their other property on November 29, 1979. A mobile home and storage shed were on this tract, but they were reserved by the plaintiffs and subsequently removed. Finally, on December 6, 1979, the plaintiffs purchased a third five-acre tract contiguous to the other two. Except for the mobile home, shed, a water well and a septic tank, the land was unimproved. At the time of these purchases all three tracts were in an unclassified zone. The plaintiffs planned to construct a mobile home park on the property.
In late 1979 the Calcasieu Parish Health Unit issued a preliminary approval of the plaintiffs' plan for the sewerage and water system for the proposed trailer park. Construction of these facilities was stopped by the health authorities, however, when it was learned that an oxidation pond was being built in a part of an existing barrow pit. Numerous requirements remain to be satisfied before final approval can be obtained.
On December 20, 1979, Langford and Cole ordered 100 electrical outlet pedestals at a cost of $11,050.00. Of this amount $6,188.00 was paid prior to February 13, 1980. The record does not reflect that any of these have been installed.
Langford applied for a flood insurance development permit and on January 2, 1980, the Calcasieu Parish License and Permit Officer issued a permit which authorized *958 him to develop a mobile home park on the north side of Ravia Road just west of Areno Road. He was told at the time a group of people had contacted the Calcasieu Parish Planning Office about opposing such development which could be adversely affected by a change of the zoning regulations.
In early January 1980, the plaintiffs hired four bulldozer service companies to begin clearing and leveling the property and building the oxidation pond or ponds, road beds and drainage ditches thereon. However, no roads, sewer lines or water lines appear to have been constructed on the land before it was rezoned on February 21, 1980. The total expenditures for the bulldozer services as of that time amounted to $7,227.75.
On January 15, 1980, Jerry Nichols moved a trailer on the property and connected it with the septic tank and water well that were on the property when it was bought by plaintiffs. Within two weeks Ivan Degetair located a second trailer next to Nichols'. A third and smaller trailer arrived shortly thereafter, but it was in need of renovation and was unoccupied at the time.
At some point in January, 1980, Ms. Janice Loraine Areno and approximately 38 other adjoining and neighboring landowners filed a petition with the Greater Ward Four Planning Commission, requesting the commission to recommend that the Calcasieu Parish Police Jury rezone this and other unclassified area to an A-1, or agricultural, zone. On February 20, 1980, after a public hearing the commission unanimously voted to make such recommendation. On February 21, 1980, the police jury adopted Ordinance No. 1935 which amended the comprehensive zoning district map of Calcasieu Parish so that the property was rezoned from unclassified to A-1, Agricultural.
On April 15, 1980, Langford and Cole sued to enjoin the Calcasieu Parish Police Jury from enforcing this rezoning amendment against them and from interfering with their construction of the mobile home park. The suit is based principally on the contention that plaintiffs had established a nonconforming use of the property prior to the adoption of the rezoning amendment.
On May 13, 1980, Ms. Areno filed a petition of intervention in the injunction proceedings. She alleged that she is owner of property located on the eastern boundary of the plaintiffs' land which would decline in value by the construction and operation of the mobile home park. She further denied the plaintiffs had established a valid nonconforming use of their property and sought to join the defendant police jury in opposing the plaintiffs' demands.
The plaintiff then filed a peremptory exception of no cause of action, asserting that the intervenor as a citizen has no interest or right to enforce or prevent the enforcement of an ordinance, the only proper party to do so being the governing body.
Following the hearing the exception was sustained and the request for a preliminary injunction was granted.
The trial judge stated in his reasons for judgment:
"In the instant case, the court finds that plaintiffs substantially completed the trailer park and actually had trailers on the premises prior to the adoption of ordinance 1935 and thus have established a non-conforming use status."
Ms. Areno has appealed the judgment sustaining the exception and the police jury has appealed the judgment on the rule for preliminary injunction.
The appellants' first specification of error is directed at the ruling as to the intervention.
We cannot agree with the trial judge that an adjacent or neighboring property owner has no cause of action to enforce or prevent enforcement of a zoning ordinance. This court held to the contrary in Adams v. Brian, 212 So.2d 128 (La.App. 3 Cir. 1968), writ refused 252 La. 880, 214 So.2d 549 (La.1968), wherein injunctive relief was granted such parties upon proof that the value of their properties would be diminished by the construction of defendant's residence in violation of a city ordinance. *959 Also see Boyd v. Donelon, 193 So.2d 291 (La.App. 4 Cir. 1966), writ refused 250 La. 366, 195 So.2d 643 (La.1967), and City of New Orleans v. Leeco, Inc., 219 La. 550, 53 So.2d 490 (La.1951), involving interventions by neighboring property owners to prevent zoning ordinance violations. We must therefore reverse the district court's judgment sustaining the plaintiff's exception of no cause of action to the intervention filed herein.
Appellants next contend the trial court erred in concluding that plaintiffs had established a prior nonconforming use of their property as a mobile home park, because such prior use must be lawful and the required health and sanitation permit for the operation of such a park has never been obtained. This specification of error appears to have considerable merit.
ARTICLE II of the Calcasieu Parish Comprehensive Zoning Law defines a nonconforming use as "[a] structure or land lawfully occupied by a use that does not conform to the regulations of the district in which it is situated." (Emphasis added.)
ARTICLE VII, SECTION I, provides that "[t]he lawful use of any building or land existing at the time of the enactment of this Ordinance may be continued, although such use does not conform with the provisions of this Ordinance." (Emphasis added.)
A trailer park is defined in ARTICLE II as "[a]n area providing spaces where one (1) or more auto trailers can be or are intended to be parked, with flush toilet and bathing facilities provided on the site."
Since the plaintiff had not obtained the necessary health and sanitation permit to provide "flush toilet and bathing facilities" for any of the 99 spaces planned for the trailer park on February 21, 1980, when this property was reclassified as A-1, Agricultural, it does not appear that they were then lawfully using the 15 acres as a trailer park.
Be that as it may, the record does not disclose whether or not such a permit was required to connect the two habitable trailers heretofore mentioned to the septic tank and water well. Consequently, we prefer to reach our decision on the issue of whether the plaintiffs were actually using the property as a trailer park prior to the effective date of the amendment to the zoning ordinance prohibiting such use. We are convinced the trial judge erred in concluding the trailer park had been "substantially completed" on that date and this with the three trailers thereon established a nonconforming use.
This decision was rendered on a rule for preliminary injunction which was tried solely on the basis of affidavits and other documentary evidence. Under the circumstances, this court is in just as good a position as was the trial judge in reviewing such evidence and making findings of fact. Be that as it may, we believe his finding in this respect was clearly wrong.
It is clear from the evidence that the planned trailer park was under construction, but far from completion on February 21, 1980. The land appears to have been cleared and leveled and a six cell oxidation pond was under construction on that date. However, there were no roads, sewer lines or drainage ditches then on the property and there were only two habitable mobile homes or trailers situated thereon. These were connected with a water well, septic tank and a utility line that had been used by the prior landowner for his mobile home, not for commercial purposes. None of the electrical outlet pedestals purchased by plaintiffs had been installed, nor had any work begun on the pads that were planned for each trailer lot. The oxidation pond had not then been approved by the health authorities and it may have to be rebuilt in a different location.
Unlike Deshotel v. Calcasieu Parish Police Jury, 323 So.2d 155 (La.App. 3 Cir. 1975), wherein the issuance of a beer and liquor permit was ordered on the basis that the plaintiff had established a nonconforming use before the zoning change because the construction of the building was then completed even though it had not yet been used, none of the plaintiffs' work on this *960 property was near completion when the zoning was changed, nor had anything done by the plaintiffs for the proposed trailer park been put to use at that time.
We recognize that in these races to complete construction prior to the effective date of the zoning change substantial completion of the facility for the intended nonconforming use is generally sufficient. However, we are convinced from our examination of the record that the plaintiffs failed to establish completion of their project to such a degree in this instance. Certainly, the commencement of construction of a trailer park prior to such time does not entitle the entirety of the land to a nonconforming use status.
We do believe, however, that renting spaces for and the location of the two inhabited trailers on the property prior to the effective date of the amended ordinance constituted a nonconforming use of those portions of the plaintiffs' land which were actually occupied by the tenants. This use of such areas may be continued. However, it cannot be extended or enlarged, because to do so would violate the specific prohibition of ARTICLE VII, SECTION 3, of the comprehensive zoning ordinance which reads in part as follows:
"A nonconforming use shall not be extended or enlarged except when required to do so by law or by ordinance."
In City of Crowley v. Prejean, 173 So.2d 832 (La.App. 3 Cir. 1965), although a different result was reached because the ordinance involved did not contain such a prohibition and the entire tract had been previously prepared for use as a trailer park, this court said:
"Generally speaking (although this is subject to the varying provisions of the specific zoning enactments), zoning regulations are violated by an enlargement or extension beyond the permissible non-conforming use established, or by increasing the area of non-conforming use." (Emphasis added)
Also, see 101A C.J.S. Zoning & Land Planning § 168, p. 515.
The preliminary injunction issued herein therefore must be limited to the particular areas of the plaintiffs' property that were actually rented and occupied by the tenants of the habitable trailers when the zoning ordinance was amended. Since we are unable to ascertain from the record these two particular spaces, it will be necessary to remand the case for the district judge to make such determination. Also, the plaintiffs' demand for a permanent injunction should be disposed of.
For the foregoing reasons, the judgment of the district court sustaining the plaintiffs' peremptory exception of no cause of action is reversed and the exception is hereby overruled. The judgment granting the plaintiffs a preliminary injunction is amended to enjoin the defendant, its agents and employees, only from interfering with the nonconforming use exercised by the plaintiffs and their tenants on February 21, 1980, on the particular areas of the property involved herein which were then rented and occupied by Jerry Nichols and Ivan Degetair (to be determined by the district judge), and to tax one-half of the court costs including this appeal, to the plaintiffs and one-half to the defendant (insofar as the law allows) and intervenor, but otherwise it is reversed and set aside. The case is remanded to the district court for further disposition in accordance with law and the views expressed herein.
REVERSED IN PART, AMENDED IN PART AND REMANDED.
CULPEPPER, J., concurs for the reasons assigned in his attached concurring opinion.
DOMENGEAUX and DOUCET, JJ., concur in the result reached.
FORET, J., dissents and assigns written reasons.
CULPEPPER, Judge, concurring.
I concur in the majority opinion except for the application of a "substantial completion" rule. The ordinance in question contains no provision for establishment of a nonconforming use by "substantial completion." *961 There is a provision in the ordinance for a grace period for completion of structures whose construction is commenced before adoption of the ordinance. However, that provision has no application here. The plaintiff did not commence construction of any "structures" before the effective date of the ordinance.
In my view, this case is controlled by Section 1 of the ordinance which states in pertinent part: "The lawful use of any buildings or land existing at the time of the enactment of this ordinance may be continued, although such use does not conform with the provisions of this ordinance." (Emphasis added.) Under these provisions, there clearly was no "lawful use" of the entire 15 acres of land as a trailer park prior to the enactment of the ordinance. Nevertheless, I agree with the majority that there was a prior nonconforming "lawful use" of two trailer spaces.
In Magness v. Caddo Parish Police Jury, 318 So.2d 177 (La.App. 2d Cir. 1975) the original opinion used a "substantial completion" test under facts involving a mobile home park. However, on rehearing the court recognized that the ordinance did not provide a "substantial completion" test. Thus, the court finally decided that the test was "actual use" for the nonconforming purpose. The same rationale applies to the present case.
FORET, Judge, dissenting.
I respectfully dissent in this matter.
I see no manifest error in the decision of the trial court holding that there was a "substantial completion" of the trailer park by the plaintiffs herein. These plaintiffs paid a total of $50,105.49 for the 15-acre tract of land involved. Up until the time of the adoption of the zoning ordinance classifying land which was previously totally unclassified and unzoned, plaintiffs had spent $18,777.75 toward the implementation of their proposed trailer park. In my view, the expenditure made by plaintiffs, when compared to the purchase price of the property cannot be said to be unsubstantial.
Be that as it may, there is some discussion that the ordinance involved makes no mention of a "substantial completion" rule. However, Section 1 of the ordinance states, in pertinent part:
"The lawful use of any buildings or land existing at the time of the enactment of this ordinance may be continued, although such use does not conform with the provisions of this ordinance." (Emphasis provided.)
In Magness v. Caddo Parish Police Jury, 318 So.2d 177 (La.App. 2 Cir. 1975), the Second Circuit initially found "substantial completion" of a mobile home park. However, on rehearing the court found that the zoning ordinance did not provide for a "substantial completion" rule, but nonetheless ruled in favor of plaintiff, finding that the test was "actual use" for the nonconforming purpose, and again ruled in favor of the plaintiff. I agree that the same rationale applies to the present case. Section 1 of the ordinance states, "The lawful use of any buildings or land ...". Certainly at the time that the plaintiffs commenced their activities and expenditures for building of this mobile home park, their activities were a lawful use of this land, and in my mind, they were "actually using" the land for the building of a trailer park. The fact that they had a good ways to go towards completion does not justify depriving these plaintiffs of the intended use of their land. According to the reasoning of the majority in this case, even if 10, 50, or 99 trailer stalls were 100% completed, but not yet occupied by mobile homes, the majority would still find that the park was not "in use" at the time of the enactment of the ordinance and, therefore, the successful race to the courthouse by the intervening parties herein could thwart the efforts of the plaintiffs even though a substantial and irreparable financial loss would result to these plaintiffs.
I find that I cannot approve a reversal of the trial court findings herein, and I respectfully dissent.
NOTES
[*] Foret, J., voted to grant a rehearing.