# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Marcie D. Weyer and Tomar Rentals, LLC,**
**Plaintiffs Below, Petitioners**

**vs) No. 14-1167** (Wood County 10-C-345)

**Wood County Commission,**
**Defendant Below, Respondent**

**FILED**

November 6, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioners Marcie D. Weyer and Tomar Rentals, LLC, by counsel Timothy J. LaFon and Keisha D. May, appeal the order of the Circuit Court of Wood County, entered on October 14, 2014, granting summary judgment in favor of Respondent Wood County Commission ("Commission") and rejecting petitioners' claim that the Commission's Floodplain Ordinance constitutes an unconstitutional taking of petitioners' property. The Commission, by counsel Wendy E. Greve and Drannon L. Adkins, filed a response. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Marcie D. Weyer is the owner of real property located in Wood County, West Virginia, which she purchased in 1999. The Commission adopted the subject Floodplain Ordinance in 1977 and enacted revisions thereto in 1985, 1990, and 2007. Petitioner Tomar Rentals, LLC, leased the property from Petitioner Weyer and operates upon it a business known as the Meadowbrook Acres Mobile Home Park. Ms. Weyer's husband, Thomas Weyer, is the sole member of Tomar Rentals, LLC. At the time Ms. Weyer purchased the property and leased it to Tomar Rentals, LLC, the property was already developed as a mobile home park. The property is located entirely within the floodplain zone.

This case centers on the application of the 2007 revision to the Floodplain Ordinance, which applies to new construction, substantial improvements, repair of substantial damage, or placement or relocation of any structure within Wood County.[1] The Ordinance requires that a

---

[1] The circuit court found that the 2007 revision was modeled after a draft ordinance that had been prepared and circulated by the West Virginia Division of Homeland Security and (continued . . .)

permit or certificate of compliance be obtained from the Floodplain Administrator before beginning any new construction or substantial improvement. In order for a site plan for new construction or substantial improvements to be approved, residential developments must be elevated two feet above the Base Flood Elevation. Therefore, all manufactured homes to be installed or substantially improved must be elevated two feet above the Base Flood Elevation, resulting in (1) significantly greater set-up costs than would be incurred outside of the floodplain, and (2) a substantial reduction of the marketability and economic longevity of the property.

In or around July of 2010, the Commission's Floodplain Manager notified Thomas Weyer in writing that it was discovered during an inspection that two mobile homes had been placed on the property in violation of the Floodplain Ordinance. The Commission's letter directed petitioners to stop work and remove the two mobile homes or to obtain the required permits within thirty days. Rather than comply with either directive, in August of 2010, petitioners filed a civil action against the Commission alleging that the passage and enforcement of the Floodplain Ordinance constituted an unconstitutional taking of petitioners' property; seeking declaratory judgment that the Floodplain Ordinance is unconstitutional; and seeking to enjoin the Commission's enforcement of the Floodplain Ordinance against then-existing mobile home lots.[2]

On June 1, 2012, the circuit court entered a "Declaratory Judgment Order," finding that "the Ordinance does restrict the use of [petitioners'] property indirectly because compliance increases the economic cost in the installation of new mobile homes."[3] However, the circuit court concluded that the Ordinance "substantially advances a legitimate state interest, which is the protection of our people and property in our state" and that it "is a legitimate exercise of government power . . . fully applicable to [petitioners]." Citing syllabus point six of *McFillan v. Berkeley County Planning Commission,* 190 W.Va. 458, 438 S.E.2d 801 (1993), the circuit court directed that the parties proceed with discovery to determine whether the application of the Ordinance destroys all economic uses of the property, and, therefore, rises to an impermissible taking of property under the Fifth Amendment to the United States Constitution and section 9 of article III of the West Virginia Constitution.[4]

---

Emergency Management, which draft was "intended to promote the general health and safety of the community and to prevent or minimize flood damage to the public."

[2] After a November 2010, hearing, the circuit court granted petitioners' motion for a temporary injunction.

[3] Petitioner's expert testified that the new mobile home set-up costs caused by the Ordinance would be between $3,500 and $5,000 for each mobile home.

[4] "Land-use regulations will not constitute an impermissible taking of property under the Fifth Amendment to the United States Constitution and Section 9 of Article III of the West Virginia Constitution if such regulations can be reasonably found to promote the health, safety, morals, or general welfare of the public and the regulations do not destroy all economic uses of (continued . . .)

Thereafter, the Commission moved for summary judgment on petitioners' remaining takings claim. By order entered on October 14, 2014, the court found, in relevant part, that "[a]lthough the property's marketability is substantially, even profoundly, diminished the consequences are more uncertain as to the extent of diminution of its economic longevity." The circuit court found that, from Tomar Rentals, LLC's profit and loss statements from January 2002 through December 2011, the property retained its economic use with positive cash flow and income. The court further found that

> [w]hile the record shows that at some point in the future the property may not be economically viable as potential residents may not choose to install mobile homes on the property due to increased set up costs, future supply and demand conditions as well as the degree to which these costs may be reduced will affect the timing and intensity of the impact on the property's future economic use.

The circuit court determined that there was no genuine issue of fact, but rather, there was an issue as to whether the facts "constituted sufficient governmental interference either in kind or degree to warrant compensation for the economic impact of the Ordinance on [petitioners]." The circuit court looked to the decision of United States Supreme Court in *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104 (1978), in which the Court stated that

> [t]he question of what constitutes a "taking" for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty. While this Court has recognized that the "Fifth Amendment's guarantee . . . [is] designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole," *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960), this Court, quite simply, has been unable to develop any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons. *See Goldblatt v. Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962). Indeed, we have frequently observed that whether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely "upon the particular circumstances [in that] case." *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958); *see United States v. Caltex, Inc.*, 344 U.S. 149, 156, 73 S.Ct. 200, 203, 97 L.Ed. 157 (1952).

*Penn Cent. Transp. Co.,* 438 U.S. at 123-24. The Supreme Court continued by stating that "in instances in which a state tribunal reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land, this

---

the property." Syl. Pt. 6, *McFillan v. Berkeley Cnty. Planning Comm'n*, 190 W.Va. 458, 438 S.E.2d 801 (1993).

3

Court has upheld land-use regulations that destroyed or adversely affected recognized real property interests." *Id.* at 125 (citation omitted).

In the present case, the circuit court determined that that the elevation requirements did not render the property "wholly useless" as it had generated net income and free cash flow at least equal to pre-ordinance levels. The circuit court granted the Commission's motion for summary judgment, concluding that the "[petitioners'] financial records before and after the enactment of the Ordinance do not support a conclusion that they are entitled to compensation on grounds that the [Commission] has effected a taking of their property." Petitioners now appeal to this Court.

This Court's review of a circuit court's order granting summary judgment is de novo. Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). On appeal, petitioners raise five assignments of error, the first of which is that there were genuine issues of fact in remaining the case. Specifically, petitioners argue that the parties' dispute as to whether at some point in the future the property may not become economically viable, coupled with their expert's opinion that the Ordinance rendered the property valueless,[5] should have precluded summary judgment. We have held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 61, 459 S.E.2d 329, 338 (1995) (citation omitted) (emphasis in original).

In the present case, the circuit court properly narrowed the issue down to the critical issue, i.e., whether application of the Ordinance to petitioners' property constituted a regulatory taking. In the present case, there is no genuine dispute that the ordinance serves a legitimate state interest in protecting health, safety, and property from flooding. The circuit court reviewed petitioners' own financial records, which showed that the property had generated the same levels of income both before and after the 2007 revision was enacted, and properly concluded that there were no genuine issues of material fact in the case. Accordingly, we find no error with respect to petitioners' first assignment of error.

Petitioners make similar arguments in their second and fifth assignments of error, so we address them together. Petitioners argue that the circuit court erred by failing to find that a "grandfather" provision in West Virginia Code § 8A-7-10 allowed for their continued use of the mobile home park without having to comply with the Ordinance. In relevant part, this statute provides as follows:

---

[5] Petitioner's expert, Darrell Rolston, opined that the property was worth $539,000 prior to the enactment of the Ordinance, but the value was "completely lost" because of the new, additional mobile home set-up costs caused by the Ordinance.

(a) After enactment of a zoning ordinance by a municipality or county, all subsequent land development must be done in accordance with the provisions of the zoning ordinance.

****

(c) Land, buildings or structures in use when a zoning ordinance is enacted can continue the same use and such use cannot be prohibited by the zoning ordinance so long as the use of the land, buildings or structures is maintained, and no zoning ordinance may prohibit alterations or additions to or replacement of buildings or structures owned by any farm, industry or manufacturer, or the use of land presently owned by any farm, industry or manufacturer but not used for agricultural, industrial or manufacturing purposes, or the use or acquisition of additional land which may be required for the protection, continuing development or expansion of any agricultural, industrial or manufacturing operation of any present or future satellite agricultural, industrial or manufacturing use. A zoning ordinance may provide for the enlargement or extension of a nonconforming use, or the change from one nonconforming use to another.

(d) If a use of a property that does not conform to the zoning ordinance has ceased and the property has been vacant for one year, abandonment will be presumed unless the owner of the property can show that the property has not been abandoned[.]

Petitioners contend that, because they depended on the zoning laws and floodplain ordinances in effect when the property was purchased, it is contrary to West Virginia Code § 8A-7-10 to require existing mobile home lots to comply with the Ordinance as revised in 2007. We disagree. Petitioners' argument fails because the Ordinance is not a zoning ordinance to which the non-conforming use "grandfather" exception applies. The Ordinance was adopted pursuant to West Virginia Code § 7-1-3v, which authorizes county commissions to enact floodplain management plans to comply with the requirements of the National Flood Insurance Act and related state and federal programs. This provision allows for freestanding floodplain management plans separate and apart from general land use regulations, such as those contemplated in West Virginia Code §§ 8A-7-1 through -13. This distinction is important because the non-conforming use or "grandfather" exception is a land-use doctrine, which is inapplicable to the Ordinance at issue here.

Additionally, the Ordinance only applies to new construction or substantial improvements. It does not restrict the development of the lots themselves within the mobile home park. Simply put, nothing in the Ordinance prevents petitioners from continuing to operate the mobile home park. Rather, the Ordinance merely requires that new or substantially-improved mobile homes be installed in compliance with a minimum floor height.

5

Petitioners' third assignment of error is that the circuit court misinterpreted this Court's decision in *McFillan* and the standard required to prove a taking by the Commission. As noted above, in syllabus point six of *McFillan*, we held as follows:

> Land-use regulations will not constitute an impermissible taking of property under the Fifth Amendment to the United States Constitution and Section 9 of Article III of the West Virginia Constitution if such regulations can be reasonably found to promote the health, safety, morals, or general welfare of the public and the regulations do not destroy all economic uses of the property.

In reaching our decision, we relied on *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992). In that case, the United States Supreme Court stated that "when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good . . . he has suffered a taking." *McFillan,* 140 W.Va. at 466, 438 S.E.2d at 809 (quoting *Lucas*, 505 U.S. at 1019).

In the present case, petitioners do not challenge the finding that the Ordinance advances the legitimate state interest of protecting the public and property from flooding. Rather, petitioners essentially contend that they suffered a taking because they cannot operate the mobile home park in their preferred way; that is, by allowing new mobile homes to be installed without complying with the Ordinance. The ordinance at issue in *Lucas* completely precluded the owner from operating a mobile home park. Such is not the case here. As we stated above, petitioners are free to operate their property as they have done in the past; the Ordinance simply places minimal restrictions on new construction activity. Therefore, petitioners' property has not lost all economically feasible uses, and the circuit court did not error in its interpretation of *McFillan.*

Finally, petitioners argue that the circuit court erred in concluding that their financial records from before and after the enactment of the Ordinance did not entitle them to compensation because their property was rendered "wholly useless." Petitioners argue that the circuit court found that the Ordinance substantially reduced the marketability and economic longevity of the property -- the prerequisite for finding that an investment has lost all economic viability, which is what constitutes a taking. Petitioners point to their expert's opinion that the value of the mobile home park is "completely lost" as a result of the Ordinance. Petitioners do not dispute that the property continues to generate income from the existing mobile homes; rather, they contend that, because of the additional set-up costs, no one will choose to place a new mobile home on petitioners' property in the future.

The United States Supreme Court has identified the following three factors for a lower court to balance when determining whether a regulation constitutes a taking, and thus, warrants compensation by the government: (1) the extent to which the regulation has interfered with the property owner's reasonable investment-backed expectations; (2) the economic impact of the regulation on the claimant; and (3) the character of the government action at issue. *See Penn Cent. Transp. Co.,* 438 U.S. at 124. In the present case, the circuit court analyzed the *Penn Central* factors and determined that the Ordinance had not impacted petitioners' income in the three to four years that petitioner operated the mobile home park after the enactment of the Ordinance, and petitioners are free to continue that operation. Insofar as petitioners speculate that

6

the Ordinance will render the installation of any new homes cost-prohibitive, to the point that *no one* will choose to install a home on petitioners' property, we find such a speculation insufficient to defeat the Commission's motion for summary judgment. Additionally, as the Commission argues, nothing in the Ordinance prohibits petitioners from attempting to assist prospective renters in their installation and then attempting to defray those costs through its rental agreements. Here, the circuit court properly concluded that the Ordinance permits continued use of the mobile home park, subject to only the Ordinance's additional requirements, and therefore, petitioners' property has not lost all of it economic viability. Consequently, summary judgment for the Commission was proper.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 6, 2015

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis

7