711 S.E.2d 552

**B.A. McCLURE and Cheryl McClure, Plaintiffs Below, Appellees**

v.

**CITY OF HURRICANE and City of Hurricane Sanitary Storm Water Board, Defendants Below, Appellants.**

No. 35532.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 13, 2010.

Decided Nov. 22, 2010.

---

Johnnie E. Brown, Esq., Bryan N. Price, Esq., Andrew D. Byrd, Pullin, Fowler, Flanagan, Brown & Poe, PLLC, Charleston, WV, for Appellants.

Harold S. Albertson, Esq., Albertson & Jones, Charleston, WV, for Appellees.

WORKMAN, Justice:

This case is before the Court upon the appeal of the City of Hurricane and the City of Hurricane Sanitary Stormwater Board (collectively referred to as "the Appellants") from the July 30, 2009, Order of the Circuit Court of Putnam County, West Virginia, granting summary judgment to the Appellees, B.A. McClure and Cheryl McClure, in a declaratory judgment action.[1] The Appellants alleged that the circuit court erred: 1) in finding that the building of individual residential dwellings by the Appellees did not qualify as new development projects or redevelopment projects under the provisions of Hurricane Municipal Ordinance §§ 936.01 to 936.44 (2005); 2) in applying the legal principle of nonconforming use to find that the Appellees' development fell within the grandfather clause of the ordinance; and 3) in failing to recognize that the Appellants' responsibility to assure the health and safety of its citizens outweighs the Appellees' interest in not having to comply with the provisions of the Hurricane ordinance. *Id.* Based upon a review of the parties' briefs and arguments,

---

1. The circuit court also granted the Appellees leave to file an amended complaint for monetary damages. The amended complaint aspect of the order is not before the Court.

the record, and all other matters submitted before this Court, the Court reverses and remands the circuit court's decision.

## I. Factual and Procedural Background

This case arises out of an action filed by the Appellees on January 13, 2006, in which the Appellees sought declaratory judgment and injunctive relief against the Appellants stemming the Appellees' development of a residential subdivision within the City of Hurricane, and the Appellants' application of the City's "Stormwater Management, Surface Water Discharge and Erosion Control" ordinance as set forth in Hurricane Municipal Ordinance §§ 936.01 to 936.44 to that subdivision.[2]

In 2001, the City approved a residential subdivision plat submitted by the Appellees. The Appellees began developing the subdivision and the circuit court found that the subdivision was continuously under development between 2001 and 2006 when the Appellants stopped the development by refusing to issue the Appellees' building permits.

The Appellants refused to issue building permits based upon the Appellees' failure to comply with the provisions of Hurricane Municipal Ordinance §§ 936.01 to 936.44. This ordinance was adopted by the City on November 1, 2004, and required that within twelve months, the City would enact requirements and standards for stormwater management and drainage effective "upon all new developments and redevelopment projects." The City adopted those standards on June 6, 2005.

The Hurricane Municipal Ordinance § 936.20(a) provides:

*The requirements and standards of this section shall apply to all new developments and redevelopment projects includ-*

*ing the disturbance of land activities of any kind, on any lot, tract, parcel or land or any portion thereof.* The intent of these regulations is to minimize the discharge and transport of pollutants to storm drain systems and prevent the deterioration of water quality.

*Id.* (emphasis added). Further, the terms "develop or development" are defined in Hurricane Municipal Ordinance § 936.03(m) to mean

any land disturbance that changes the runoff or erosion characteristics of a lot, tract, parcel of land, or any portion thereof, in conjunction with residential, commercial, industrial, or institutional construction, alteration, or modification that has the potential to change the runoff or erosion characteristics of a lot, tract, or parcel of land, or any portion thereof, in conjunction within residential, commercial, industrial or institutional construction, alteration or modification.

Likewise, the term "redevelopment" is defined in the ordinance as "any reconstruction, alteration or improvement of land disturbance performed on any site or modification to an existing property that requires or would require a building permit under existing ordinance." Hurricane Mun. Ord. § 936.03(ff).

The Appellants argue that the Appellees must comply with Hurricane Municipal Ordinance §§ 936.01 to 936.44. 936, including the provision requiring a stormwater retention pond, before the Appellants will issue any additional building permits for the remaining lots in the Appellees' subdivision. Because of the Appellants' refusal to issue additional building permits, the Appellees have been unable to construct the remaining thirty homes in the development.

---

**2.** The Appellees did not challenge the validity of the ordinance or the City's authority to enact the ordinance pursuant to West Virginia Code of State Rules §§ 47–10–1 to –10–18 (relating to the National Pollutant Discharge Elimination System ("NPDES") Program), West Virginia Code § 8–20–1 (2007) (relating to waterworks and sewerage systems) and West Virginia Code § 16–13–1 (2008) (relating to stormwater collection and control systems).

It is axiomatic that pursuant to numerous statutes, including those cited *supra* and the provi-

sions of West Virginia Code § 8–12–5, which set forth the general powers of every municipality, the Legislature has given municipalities the plenary power to enact new ordinances as the governing body of the municipality deems necessary, so long as the ordinances do not conflict with the Constitution or other statutes. Obviously, such ordinances impact not only the citizens of the municipality, but also businesses and development.

On or about August 17, 2006, the parties submitted an "Agreed Order of Findings of Facts and List of Issues of Law to be Ruled Upon by the Court." Thereafter, the Appellees filed a motion for summary judgment on September 8, 2006, to which the Appellants responded and a hearing was held before the circuit court; however, the record does not reflect the date of the hearing.[3] Likewise, there is no transcript of any hearing on the motion for summary judgment in the record.

On January 27, 2009, the Appellees filed a substitution of counsel and the Appellees' new counsel,[4] who is the current counsel on appeal, filed a motion for leave to amend the complaint to assert monetary damages. At an April 3, 2009, hearing, prior to the taking up the Appellees' motion to amend their complaint, the circuit court advised the parties that based upon the pleadings in the circuit court's file and transcripts of the prior hearing, it intended to rule in favor of the Appellees and hold that the relevant ordinance was not applicable to their subdivision. The circuit court also gave the Appellants thirty days to respond to its intended ruling in the case, acknowledging that none of the parties were prepared to address the specific declaratory judgment issues at the hearing.

Subsequently, within the thirty-day time frame set by the circuit court, the parties filed additional briefing on the summary judgment motion pending before the Court. On July 30, 2009, the circuit court entered its Order granting summary judgment in the Appellees' favor, determining that the relevant ordinance was not applicable to the Appellees' subdivision.[5]

## II. Standard of Review

 "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). A de novo standard of review also governs the interpretation of any statutory provision, or in this case, a municipal ordinance as it involves a purely legal question. *See* Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

## III. Discussion of Law

### A. Whether the Appellees' project falls within the purview of the ordinance

The focus of the instant appeal is predicated upon the circuit court's legal determination that Hurricane Municipal Ordinance §§ 936.01 to 936.44 does not apply to the construction of new residential housing de-

3. All the record reveals is that on November 20, 2006, the parties sent a joint letter to the circuit court indicating that they agreed to let the circuit court decide the summary judgment issues on briefing alone without any hearing. By letter dated July 2, 2007, however, the circuit court informed the parties to contact the court as it wanted to hear oral argument on the summary judgment motion.

4. There was also a substitution of counsel for the Appellants and the election of a new circuit judge to preside over the action.

5. Subsequent to the entry of this order granting summary judgment, the Court granted the petition for appeal on March 31, 2010. On or around April 19, 2010, the Appellees attempted to obtain building permits from the Appellants for further development. The Appellants moved the circuit court for a stay pending the appeal. In response, the Appellees filed a motion for injunction alleging that they would suffer irreparable harm if the Appellants were not restrained from and enjoined from continuing to deny them building permits.

Following a hearing, the circuit court issued an order on July 23, 2010, granting the Appel-

lants a stay conditioned upon the posting of a bond in the amount of $336,000 within 20 days of the entry of the Order. The circuit court further provided in its order that if the Appellants failed to post the bond, then the Appellees could submit to the circuit court an order directing the Appellants to cease denying the Appellees permits on the basis of the subject ordinance. The Appellants filed a writ of prohibition with the Court, which was denied on September 23, 2010.

Thereafter, the circuit court issued new rulings including an injunction as to part of the subdivision. Essentially, the circuit court ordered the Appellants to grant building permits as to specific lots, with the requirement that the Appellants post a $10,000 bond to stay such ruling pending the outcome of the instant appeal. The prior bond requirement of $336,000 was removed. The Appellants filed a "Motion to Stay Underlying Proceedings Pending Appeal and Seeking Relief From Any Appeal Bond," wherein the Appellants sought a stay with the Court regarding the $10,000 appeal bond on same basis as the Appellants' previously-filed writ of prohibition. The Appellants' motion was denied by the Court on October 13, 2010.

velopment in the Appellees' subdivision. The Appellants argue that the circuit court erred in determining that the ordinance did not apply to the Appellees' project because it was neither new development nor redevelopment. The Appellants maintain that each individual home that has been built in the Appellees' subdivision was required to have a separate and individual building permit. Thus, the Appellants posit that each building permit application sought for the erection of a residential dwelling for the remaining lots in the Appellees' subdivision is new development as contemplated by Hurricane Municipal Ordinance § 936.20(b). On the other hand, the Appellees assert that the circuit court correctly concluded that the ordinance, by its express terms, does not apply to the Appellees' subdivision, as the ongoing development of the subdivision,[6] which began five years prior to the effective date of the ordinance, is neither new nor redevelopment.

As previously mentioned, the term "development" is defined, in pertinent part, in the ordinance as

> any land disturbance that changes the runoff or erosion characteristics of a lot, tract, parcel of land, or any portion thereof, in conjunction with residential, ... construction, alteration, or modification that has the potential to change the runoff or erosion characteristics of a lot, tract, or parcel of land, or any portion thereof, in conjunction with residential, ... construction, alteration or modification.

Hurricane Mun.Code § 936.03(m). The term "development," however, is preceded by the word "new" in Hurricane Municipal Ordinance § 936.20(a). So, the "requirements and standards" for the stormwater management and erosion control comprehensive drainage plans "shall apply to all *new developments and redevelopment* projects including the disturbance of land activities of any kind, on any lot, tract, parcel or land...." *Id.* (emphasis added). Thus, the resolution on the issue presented turns on whether building a new home on a lot in an existing or ongoing subdivision project is sufficient to trigger application of the ordinance.

■ "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). Further,

> this Court observed that the relevant statutes had to be "read in pari materia and any ambiguous provisions in the statutes should be interpreted in such a manner as to avoid conflict and give effect to all of the provisions of the related sections of the statutes." Syllabus Point 1, in part, *Carolina Lumber [Co. v. Cunningham,* 156 W.Va. 272, 192 S.E.2d 722 (1972) ] .... *See also* Syllabus Point 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.").

*Richards v. Harman,* 217 W.Va. 206, 210, 617 S.E.2d 556, 560 (2005).

■ There is no argument raised regarding any ambiguity in the subject ordinance, so this Court must accept the plain meaning of the ordinance before us. First, the term "new" is defined as "beginning as the resumption or repetition of a previous act or thing." *Merriam–Webster's Collegiate Dictionary* 834 (11th ed.2005). Under this definition of the word "new," the further development of the remaining lots in the Appellees' subdivision by the construction of additional homes is the repetition of the previous acts of constructing the existing homes. To this end, it is undeniable that

---

**6.** The circuit court found that the Appellees had completed two of three streets and a total of 41 homes in the subdivision. Further, the Appellees had obtained numerous permits for the subdivision, including one issued under the West Virginia NPDES Stormwater Program, as well as various city permits. Even if the ordinance had not been enacted, the Appellees still had to obtain building permits for the construction of new homes.

the development of each additional lot within the Appellees's subdivision is "new development" to which the provisions of Hurricane Municipal Ordinance § 936.20 were intended to apply.

Next, the Court must also read the entire ordinance in pari materia, rather than focusing upon a single word, in this case the word "new," as the circuit court did. When the entire ordinance is examined, it is clear that the ordinance governs the Appellees' subdivision. For instance, Hurricane Municipal Ordinance § 936.10 provides

> No person(s), individual(s), landowners, *developer(s)*, operator(s) or their assign(s) *shall be allowed to develop or engage in land disturbing activities of any kind, on any lot, tract, parcel of land, or any portion thereof for residential ... development, redevelopment, addition or modification* without obtaining and providing the appropriate Permits, including, but not limited to ... Stormwater Management and Erosion Control Plan, or any/all documents, notices, agreements, bonds, or permits required by the City of Hurricane ... to manage stormwater or any/all other land disturbing activities regulated by the City....

*Id.* (emphasis added). Further, Hurricane Municipal Ordinance § 936.13(a) provides that

> (a) Any person(s), individual(s), landowner(s), *developer(s)*, operator(s) or their assign(s) *that intend to develop or engage in land disturbing activities of any kind, on any lot, tract, parcel of land or any portion thereof for development, redevelopment, construction, addition or modification work in the City watershed of the City* must hold a pre-construction meeting with the Designated Manager *prior to the initiation of any construction or land disturbing activities* ....

*Id.* (emphasis added). Finally, under the enforcement provisions of the ordinance, "[n]o person(s), individual(s), landowner(s), *developer(s)*, operator(s), or their assign(s) *shall construct or maintain any property, residence* or business not in compliance with the standards of this Article." Hurricane Mun. Ord. § 936.19(a) (emphasis added).

■ Based upon the foregoing, the City, in enacting the relevant ordinance, not only broadly defined "development," to include "any land disturbance," but also repeatedly provided throughout the ordinance that it governed "developers," who are developing or constructing residential lots, tracts or parcels of land. Hurricane Mun. Ord. § 936.06(mm), § 936.10; and § 936.19(a). Accordingly, the Court holds that the provisions of Hurricane Municipal Ordinance §§ 936.01 to 936.44 (2005) govern all new development and redevelopment projects including the disturbance of land activities of any kind, on any lot, tract, parcel or land or portion thereof and, therefore, the construction of new residential homes in an existing subdivision falls within the purview of the ordinance. Because the Appellees seek to further develop the remaining lots in their subdivision by constructing residential homes on those lots, such development falls within the purview of the ordinance at issue and, therefore, the Appellees must comply with the requirements of the ordinance. *Id.*

The circuit court further found, however, that

> the Defendants have blocked the completion of the remaining thirty homes under the claim that the City will not issue individual building permits without a stormwater retention plan *for the entire subdivision,* treating the project as a whole. The Defendants also raise the issue that the subdivision may have been built in phases as a reason to apply the new ordinance to the McClures' *entire* project. The Defendants cannot treat the project as one project for purposes of requiring and implementing a stormwater pond and then treat the construction project as individual homes under individual building permits for purposes of applying the ordinance to the project.

On appeal, the Appellants argue that they "could not agree more that the ordinance was clearly intended to apply to only those building permits issued after the date the ordinance was enacted." While it appears that the Appellants may have changed their position on the issue of requiring the Appellees

to put in a stormwater retention plan for the entire subdivision, the express terms of Hurricane Municipal Ordinance § 936.20(a) provide that the stormwater management and erosion control comprehensive drainage plan requirements and standards apply only to "new construction and redevelopment." *Id.* The Appellants, therefore, cannot require the Appellees to implement a stormwater management plan for that portion of the subdivision that has existing construction and, thus, is neither new development nor redevelopment. The ordinance applies only to any new construction or redevelopment on lots, tracts, parcels, land or any portion thereof in the subdivision.

### B. Applicability of the Grandfather Clause contained within the provisions of Hurricane Municipal Code

Hurricane Municipal Ordinance § 936.22(a) provides that "[f]ollowing June 6, 2005, no building permit shall be issued without an approved stormwater management plan required under this Article." *Id.* The circuit court found that this provision "clearly recognizes that the stormwater ordinance would apply to only building permits issued after the date the ordinance was enacted that actually required a stormwater management plan (new developments and redevelopment projects)." Thus, the circuit court found that, because the Appellees' subdivision began before both the date of the ordinance was approved and the date stated in the ordinance, a stormwater management plan was not required for the Appellees' subdivision prior to the issuance of a building permit.

The Appellants argue that the circuit court erred in applying the legal principle of nonconforming use [7] to find that the Appellees were "grandfathered" [8] from complying with the stormwater ordinance. The Appellees, on the other hand, assert that the circuit court did not err in its determination that the Appellees' development fell within the purview of the grandfather clause of Hurricane Municipal Ordinance § 936.22.

The circuit court's ruling ignores the express language of the ordinance. So long as a building permit is sought after June 6, 2005, it will not issue without an approved stormwater management plan as required by the ordinance. *Id.* The Appellees sought the building permits in this case after June 6, 2005. Accordingly, the Appellees were not exempted from complying with the ordinance.

As additional support for the circuit court's conclusion that the Appellees' requests for building permits fell within the grandfather clause of Hurricane Municipal Ordinance § 936.22(a), the circuit court relied upon the decision of this Court in *H.R.D.E., Inc. v. Zoning Officer of the City of Romney,* 189 W.Va. 283, 430 S.E.2d 341 (1993).[9] The circuit court recognized that this decision was a zoning case, but relied on the decision anyway, stating

the same concerns arise for stormwater management ordinances as arise in zoning ordinances: permanent restrictions and burdens on the use of land, the hardship of

---

7. In *McFillan v. Berkeley County Planning Commission,* 190 W.Va. 458, 438 S.E.2d 801 (1993), this Court held in syllabus points three that
 [a] non-conforming use is a use which, although it does not conform with existing zoning regulations, existed lawfully prior to the enactment of the zoning regulations. These uses are permitted to continue, although technically in violation of the current zoning regulations, until they are abandoned. An exception of this kind is commonly referred to as a 'grandfather' exception.
 *Id.*

8. The term "grandfather clause" is defined as
 [a] provision that creates an exemption from the law's effect for something that existed before the law's effective date; specif., a statutory or regulatory clause that exempts a class of

persons or transactions because of circumstances existing before the new rule or regulation takes effect.
*Black's Law Dictionary* 718 (8th ed.1999).

9. The Court, likewise, does not find its decision in *Ashbaugh v. Corporation of Bolivar,* 223 W.Va. 741, 679 S.E.2d 573 (2009), controlling as argued by the Appellees. In *Ashbaugh,* the Appellants challenged the validity of an ordinance concerning the connection of privately constructed streets to existing ones. The Appellants argued that the enactment of the ordinance was an improper attempt to frustrate the development of a subdivision. *Id.* at 742, 679 S.E.2d at 574. Unlike *Ashbaugh,* the validity of the ordinance is not at issue in the matter now before the Court.

immediate compliance with new ordinances regulating existing uses, and the reduction on the value of property with the ordinance in place. Therefore, the Court finds the closest precedents to guide this Court are zoning regulations, even though stormwater regulations are not zoning regulations *per se.*

In *H.R.D.E.,* a landowner brought an action challenging the Romney City Council's affirmance of an order of the board of zoning appeals' denial of a building permit for construction of property for elderly and physically handicapped. *Id.* at 284, 430 S.E.2d at 342. The landowner had purchased property, including culverts and storm sewers for the access road. *Id.* at 285, 430 S.E.2d at 343. Material for the project also had been delivered and unloaded on the construction site. *Id.* The construction, however, had not begun and was delayed. *Id.* The City of Romney, in the interim, began the process of enacting a zoning ordinance, which ultimately became law. *Id.* at 285–86, 430 S.E.2d at 343–44. The landowner then sought a building permit for construction of an apartment building, which was disapproved because the building was to be constructed in a residential district and the project failed to qualify as a nonconforming use. *Id.* at 286, 430 S.E.2d at 344.

The Court, on appeal, found that the issue to be addressed was whether the actions of the landowner were sufficient to establish a vested right to a nonconforming use as the project was started several years before the zoning ordinance was enacted. *Id.* The Court determined that the landowner had vested rights to complete the project to build the housing for the elderly and physically handicapped as a nonconforming use, even though the landowner had not completed or even started the project before the zoning ordinance was enacted. *H.R.D.E.,* 189 W.Va. at 288, 430 S.E.2d at 346.

The reliance by the circuit court on this Court's decision in *H.R.D.E.* was erroneous. The decision in *H.R.D.E.* dealt with a non-conforming use, a concept which is part of the law of zoning. *H.R.D.E.,* 189 W.Va. at 286, 430 S.E.2d at 344 ("A nonconforming use is '[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated[.]' 1 Robert M. Anderson, *American Law of Zoning* 3d, § 6.01, at 446 (1986)."). The applicability of the instant ordinance to the new construction in the Appellees' subdivision is not analogous to nonconforming use in a zoning case. The subject ordinance was not enacted as part of a comprehensive plan and did not change or alter the character or use of the Appellees' property. *See, e.g., Largent v. Zoning Bd. of Appeals for the Town of Paw Paw,* 222 W.Va. 789, 671 S.E.2d 794 (2008). To the contrary, the resolution of the instant matter was one of statutory construction.[10]

## IV. Conclusion

Based upon the foregoing, the decision of the circuit court is reversed and remanded for entry of an order consistent with this opinion.

Reversed and remanded.

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

KETCHUM, J., dissenting:

I dissent because this Court should adopt the vested rights doctrine as it applies to property developers. My reasons, in the context of this case, are as follows:

### *RELEVANT UNDISPUTED FACTS*

1) In 2001, the City of Hurricane (City) approved the appellee's (the developer's) subdivision plat. After approval, the plat was recorded in the office of the Clerk of the Putnam County Commission. The approval of the City and the recordation with the Clerk complied with *W.Va.Code,* 39–1–13 (1923) and *W.Va.Code,* 39–1–16 (1923), which

---

**10.** Because the Court upholds the applicability of the ordinance to the Appellees' subdivision, there is no need to address the Appellants' issue regarding the circuit court's failure to recognize that their responsibility to assure the health and safety of the City's citizens outweighs the Appellees' interest to be exempt from the ordinance.

490

concern the approval and recordation of subdivision plats.

2) The developer then spent substantial sums of money developing the subdivision's lots, roads and infrastructure which totaled more than $150,000.00. After obtaining building permits from the City, the developer built 41 houses in the subdivision.

3) Four years later, on June 6, 2005, the City enacted a stormwater management ordinance.

4) After the storm water management ordinance was enacted, the City refused to issue any more building permits to the developer, even though the developer has 30 remaining vacant lots in the previously approved subdivision plat. The City refused to issue building permits unless the developer agreed to build a $25,000.00 stormwater retention pond on three of the subdivision's vacant lots. The developer's pro-rata vacant lot cost was approximately $22,000.00, or a cost of $66,000.00 for the three lots that would be taken for the pond.

5) The developer refused to build the stormwater retention pond because the subdivision plan was approved before the new stormwater ordinance was adopted. More than 50% of the subdivision development was completed at substantial cost when the stormwater ordinance was adopted.

6) The City's refusal to issue the building permits on any of the developer's 30 remaining vacant lots has prevented the developer from completing the subdivision.

### THE DEVELOPER'S "VESTED RIGHT" IN THE SUBDIVISION'S COMPLETION

The parties argued in the circuit court and in this Court about whether the subdivision was a nonconforming use and, therefore, grandfathered into the June 6, 2005 stormwater management ordinance. The developer should have argued that land-use law gives it a "vested right" to complete the subdivision without complying with the new stormwater management ordinance. Had this argument been developed, it could very well have lead the majority to the correct conclusion that the developer does have a "vested right" to finish his subdivision without complying with the new stormwater management regulations.[1] Despite the parties' lapse in developing what I believe is the controlling issue, the majority should have adopted the vested rights doctrine.

Vested rights in land-use law deal with a developer's right "to continue with development of a proposed—but not yet final—use of land in the face of subsequent changes of law." John J. Delaney, *Vested Rights and the Development Chronology 2000 Update*, SF08 ALI–ABA 379 (2000). *See also*, John J. Delaney, *Vesting Verities and the Development Chronology: A Gaping Disconnect?* 3 *Wash. U. Journal of Law & Policy*, 603 (2000); Daniel R. Mandelker, *Vested Rights and Nonconforming Uses*, SK002 ALI–ABA 1103 (2004); Christopher Serkin, *Existing Uses and the Limits of Land Use Regulations*, 84 NYU Law Rev. 1222 (2009).

Simply stated, vested rights of a subdivision developer deal "with the right to complete a development despite changes in land development regulations[.]" Daniel R. Mandelker, *Vested Rights & Nonconforming Uses, supra.*

The controlling issue is when does the developer's use of the subdivision property vest or what does it take for the development right to vest? There are no West Virginia cases dealing with the vested rights doctrine. However, land-use law, where developed, generally holds:

1. Justices Cleckley and Davis teach that this Court has authority to address an issue not properly presented at the trial court level.

[A]lthough the rule requiring all appellate issues be [properly] raised first in the circuit court is important, it is not immutable: Our cases have made clear that the failure to [properly] raise issues below is not a jurisdictional prerequisite to an appeal but, rather, is a gatekeeper provision rooted in the concept of judicial economy, fairness, expediency, respect, and practical wisdom. Requiring issues to be [properly] raised at the trial level is a juridical tool, embodying appellate respect for the circuit court's advantage and capability to adjudicate the rights of our citizens. *Louk v. Cormier*, 218 W.Va. 81, 86, 622 S.E.2d 788, 793 (2005), citing *State v. Greene*, 196 W.Va. 500, 505, 473 S.E.2d 921, 926 (1996).

A landowner obtains a vested right to complete construction on a specific development project when the landowner

(1) obtains or is the beneficiary of an affirmative governmental act allowing development of a specific project, and

(2) relying in good faith upon the affirmative governmental act,

(3) makes a substantial change in position or incurs extensive obligations or expenses in the furtherance of the specific project in accordance with the affirmative governmental act.

Grayson P. Haynes and J. Randall Minchew, *On Vested Rights to Land Use and Development*, 46 Wash. & Lee L.R. 373, 386 (1989). *See also,* J. Spencer Hall, *State Vested Rights Statutes: Developing Certainty and Equity and Protecting the Public Interest*, 40 The Urban Lawyer 451 (2008).

John J. Delaney, a leading commentator on land-use law, notes that vested rights law in the United States can be confusing due to a hodge-podge of case-by-case judicial decisions. However, Delaney agrees that the general black letter rule for the acquisition of a vested right in a development (subdivision) occurs when (1) the landowner relies in good faith on an act or omission of the government, and (2) the landowner makes substantial expenditures prior to the land regulation changes. John J. Delaney and William Komines, "He Who Rests Less, Vests Best: Acquisition of Vested Rights in Land Development," 23 St. Louis Univ. Law Journal 219 (1979). *See also,* John J. Delaney, *Vested Rights and The Development Chronology 2000 Update,* SF08 ALI–ABA 379 (2000).

In 2004, our Legislature passed land-use legislation that specifically recognizes the vested rights doctrine. *See,* W.Va.Code, 8A–5–12 (2004). This new law does not apply to the City in this case. Nevertheless, it spells out the West Virginia Legislature's thoughts on the vested rights of subdivision developers.

Specifically, *W.Va.Code,* 8A–5–12 (2004), provides:

(a) A vested property right is a right to undertake and complete the land development. * * *

(d) Without limiting the time when rights might otherwise vest, a landowner's rights vest in a land use or development plan and cannot be affected by a subsequent amendment to a zoning ordinance or action by the planning commission when the landowner:

(1) Obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project;

(2) Relies in good faith on the significant affirmative governmental act;

(3) Incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act.

Land-use law is rapidly developing because of urban sprawl. Our courts have had very few cases dealing with land-use law because we have been a rural state. However, land use is rapidly changing in this State. Lawyers dealing with these cases need to educate themselves, the trial courts, and any appellate court. Lawyers can no longer rely only on West Virginia precedent. They must consult decisions from other jurisdictions as well as the numerous articles and treatises on the subject. A good starting point is Daniel R. Mandelker, *Land Use Law* (5th ed. Matthew Bender 2003); Delaney, Abrams and Schnidman, *Handling the Land Use Case* (Thomson Reuters/West 3rd ed.2010); and James A. Kushner, *Subdivision Law and Growth Management* (2nd ed. Thomson Reuters/West 2010).

I respectfully dissent. We should have taken this opportunity to examine and adopt the vested rights doctrine. I am convinced that the vested rights doctrine governs the developer's right to complete the subdivision.