# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2026 Term

**FILED**

**February 24, 2026**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 24-ICA-455

_____

BRADLEY A. REED,
Plaintiff Below, Petitioner,

v.

P. TODD PHILLIPS,
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Monongalia County
Honorable Perri J. DeChristopher, Judge
Civil Action No. CC-31-2022-C-124

AFFIRMED
_____

Submitted: January 13, 2026
Filed: February 24, 2026

Michael D. Crim, Esq.
Crim Law Office, PLLC
Clarksburg, West Virginia
Counsel for Petitioner

Melvin F. O'Brien, Esq.
Michelle D. Baldwin, Esq.
Dickie, McCamey & Chilcote, L.C.
Wheeling, West Virginia
Counsel for Respondent

JUDGE WHITE delivered the Opinion of the Court.

WHITE, JUDGE:

Petitioner Bradley A. Reed appeals from the October 18, 2024, order of the Circuit Court of Monongalia County granting summary judgment in favor of Respondent P. Todd Phillips, who was the defendant in this legal malpractice action. According to Mr. Reed, his attorney, Mr. Phillips, was negligent in failing to raise grandfathering as a defense to a notice of violation issued by the Town of Beverly alleging that Mr. Reed violated the 2015 International Property Management Code ("IPMC") in connection with his operation of a service station and garage. For reasons stated below, we affirm the judgment of the circuit court.

## I. FACTUAL AND PROCEDURAL HISTORY

Mr. Reed purchased the Marathon service station and garage located in the town of Beverly, West Virginia (the "Town") in 2003. At the time, the property was subject to a 1988 Litter Ordinance, which provided in Section 12A: "No person … shall allow any… junked, discarded or otherwise nonoperating motor vehicle to remain on such property longer than ten days; . . . except that this section shall not apply with regard to any vehicle in an enclosed building or so located upon the premises as not to be readily visible." Section 12A also stated that

> [t]his ordinance shall further not apply with regard to any vehicle on the premises of a business enterprise operated in a lawful place, other than in a residential district, and operated in a lawful manner, when the *keeping or maintenance of such*

1

> *vehicle is necessary to the operation of such business enterprise.*

(Emphasis added).

Mr. Reed regularly kept inoperative vehicles on his property, which were not enclosed and were clearly visible from surrounding properties. Mr. Reed contends that this use of his property was necessary for the operation of his business and was therefore lawful under the 1988 Litter Ordinance.

By letter dated July 26, 2006,[1] the Town's attorney advised Mr. Reed that his service station was in violation of the town's litter ordinance, noting that the property looked like a salvage yard, with truck beds, "junked" cars, used car parts, tires, and oil/fuel lying about, and that the condition of the property posed "a potential health hazard."[2] The Town's attorney called Mr. Reed's attention to the 1988 Litter Ordinance[3], which stated

---

[1] Petitioner's brief incorrectly states that this letter was written in "late 2007."

[2] According to the letter:

> … the "junk" around your station poses a potential health hazard. The potential for rats and other "unwelcome" animals to make residence in the stockpiled vehicles concerns the adjacent landowners. Further, the stockpile of used parts, tires, and what appears to be motor oil/fuel is a concern for the residents of Beverly because [any] potential run-off could affect the small stream that runs in the vicinity under the road and into the Tygart River.

[3] Petitioner's brief states that this letter was based on alleged violations of a 2007 ordinance, but the letter was written before the 2007 ordinance was passed, so it must have been referring to the 1988 Litter Ordinance.

that inoperative vehicles could not be kept on the property for more than ten days, unless they were kept in an enclosed building, or were not readily visible from surrounding properties. The letter directed Mr. Reed to remove or enclose the nonoperating vehicles and parts located on his property, and to "clean up your premises in compliance with the Town's litter ordinance," by August 26, 2006, or he would be fined for each day on which the violations continued. This deadline was later extended to September 30, 2006, and Mr. Reed was again advised by the town's attorney that he would be fined $100 per day for each day after that date that he was not in compliance with the 1988 Litter Ordinance.

On October 11, 2006, the Town council found Mr. Reed to be in violation of the 1988 Litter Ordinance and summoned him to appear at their meeting in November to show cause why he should not be found in violation of the litter ordinance. If he failed to appear at that meeting, a lien would be placed on his property equal to $100 for each day he was in violation. The record on appeal does not indicate whether Mr. Reed appeared at this meeting or if a lien was placed on his property.

On or about October 10, 2007, the Town adopted a new ordinance which defined "Litter" to include, among other things, "motor vehicle parts, [and] junked and/or abandoned vehicles…" Additionally, Section 12B of the 2007 Litter and Property Maintenance Ordinance ("2007 Litter Ordinance") allegedly stated: "Exterior storage of other vehicles. Any vehicles parked or stored within the town limits must be currently

licensed and currently state inspected."[4] The 2007 Litter Ordinance did not contain a grandfather clause, and neither party contends that Mr. Reed's use of his property would have been lawful under the 2007 Litter Ordinance without grandfathering.[5]

By letter dated April 21, 2008, the Town's attorney advised Mr. Reed that he violated the Town's 2007 "Property and Litter Management Ordinance [sic][6] and the Zoning Ordinance" and that if he did not correct various violations listed in the letter within thirty days, the Town would file a lawsuit against him and his business. The letter observed that Mr. Reed had been "provided with several opportunities to do so in the past and at times, you have made an effort to comply, however, you have recently fallen back to your earlier non-compliance with the ordinances of the Town of Beverly." In the letter, the Town listed several corrective actions required to bring the property into compliance, including the removal of unlicensed vehicles from the property, the removal of drums, wheels, and tires, the removal of hoods or other car parts, the removal of scrap metal, and storing "truck beds neatly on outside racks or… inside of the building." The record does not indicate what, if any, actions Mr. Reed may have taken in response to this letter.

---

[4] The copy of the 2007 Litter Ordinance presented for our review does not contain Section 12B, but the circuit court order under review states that Section 12B contains the quoted language and neither party has disputed this statement.

[5] In fact, the circuit court held that Mr. Reed's use of his property was prohibited under the 2007 Litter Ordinance.

[6] This ordinance was actually styled "Litter and Property Maintenance Ordinance."

4

On November 13, 2017, the Town passed an ordinance adopting the 2015 version of the IPMC.[7] Section 302.8 of the IPMC provided:

> **302.8 Motor Vehicles**. Except as provided for in other regulations, no inoperative or unlicensed motor vehicle shall be parked, kept or stored on any *premises* and no vehicle shall at any time be in a state of major disassembly, disrepair, or in the process of being stripped or dismantled. Painting of vehicles is prohibited unless conducted in an *approved* spray booth.

This language was subject to the following exception:

> **Exception:** a vehicle of any type is permitted to undergo major overhaul, including body work, provided that such work is performed inside a structure or similarly enclosed area designed and *approved* for such purposes.

Although the 2015 IPMC does not contain a grandfather clause, the 2017 Ordinance which adopted it provided that:

> (d) Nothing in this legislation or in the International Property Maintenance Code hereby adopted shall be construed to affect any suit or proceeding impending in any court, or any rights acquired, or liability incurred, or any cause or causes of action acquired or existing, under any act or ordinance hereby repealed of this law. Nor shall any just or legal right or remedy of any character be lost, impaired, or affected by this legislation.

---

[7] According to the 2017 Ordinance, the IPMC was adopted pursuant to West Virginia Code § 8-12-13(c) (2017), which authorizes municipalities to adopt the "state building code promulgated by the State Fire Commission." The 2017 Ordinance repealed "all previously enacted ordinances of the Town of Beverly or parts of ordinances in conflict with the adoption of the same."

The parties do not dispute that this language is sufficient to function as a grandfather clause and preserve a use that was lawful before the 2017 Ordinance was enacted. Furthermore, neither party contends that Mr. Reed's use of his property was allowed under the IPMC without grandfathering.

On April 12, 2018, the Town's Code Enforcement Officer[8] issued a notice of violation concerning four sections of the IPMC and gave Mr. Reed twenty days to bring his property into compliance. On or about July 16, 2018, following a hearing at which Mr. Reed appeared pro se, the Appeals Board of the Town of Beverly ("Appeals Board") unanimously affirmed the Notice of Violation, finding that the various violations had not been substantially corrected. Mr. Reed subsequently hired Mr. Phillips to represent him, and on August 6, 2018, they appealed the decision of the Appeals Board to the Circuit Court of Randolph County. By an order entered on October 28, 2019, the parties voluntarily dismissed all the alleged violations of the IPMC except for the violation of Section 3.02

---

[8] Section 3-7(f) of the 2017 Ordinance stated in part that:

> The Code Official shall enforce the provisions of the International Property Maintenance Code. The Code Official shall have the authority to render interpretations of this code and to adopt policies and procedures in order to clarify the application of its provisions. The Code Official shall issue all necessary notices and orders to ensure compliance.

Similar language is contained in Section 104.1 of the IPMC.

pertaining to motor vehicles.[9] During the hearing on the Town's motion for summary judgment, Mr. Phillips did not argue that Mr. Reed's use of his property was lawful under the 1988 Litter Ordinance and had been grandfathered as a lawful preexisting use when the IPMC was adopted. On May 22, 2020, the circuit court entered an order finding that Mr. Reed had clearly violated the IPMC provision pertaining to unlicensed and inoperative vehicles and granted summary judgment in favor of the Town. In its order, the circuit court found that Mr. Reed had admitted in discovery to parking, keeping, and storing several inoperative vehicles on his property for lengthy periods with "no apparent effort to restore them to an operable condition,[10]" and awarded $40,300.00 against Mr. Reed. Its judgment was never appealed and is now final.

---

[9] The Notice of Violation also alleged that the property owned by Mr. Reed was unsafe and unfit for human occupancy, had an accumulation of garbage, and was a rodent harborage. All of these alleged violations were voluntarily dismissed.

[10] In its order, the Circuit Court of Randolph County found that:

…plaintiff admitted to the violation of 2015 [IPMC] … through discovery responses in which plaintiff admitted that …he had parked, kept, or stored motor vehicles on his property. In his deposition, plaintiff acknowledged that most of the vehicles on his property were inoperative and have been on the property for over a year.

This Court recognizes that Mr. Reed operates a car repair business. The Court distinguishes the applicability of [the] 2015 [IPMC] to the nature of this business, i.e., restoring automobiles to a running and operable condition for prompt return to their owner's use, from its applicability to the facts of this case, wherein at least nine different motor vehicles have accumulated at [Mr. Reed's] business location which have remained there for a period of over a year with no apparent effort to restore them to an operable condition useful to their respective owners. For example, [Mr. Reed] clearly is "storing" an inoperable 1982 Mercedes Benz automobile on this property, for its owner, for a fee.

7

On May 23, 2022, Mr. Reed filed a complaint against Mr. Phillips, his former counsel, in the Circuit Court of Monongalia County,[11] alleging that he had committed malpractice by failing to file an appeal, by failing to notify Mr. Reed that no appeal had been filed, and by "not properly advising and representing the interests of [Mr. Reed] with respect to the issues regarding the Town of Beverly."[12] Both parties filed motions for summary judgment. Although the complaint did not specifically allege that Mr. Phillips had committed malpractice by failing to argue that Mr. Reed's use of his property was grandfathered, the circuit court heard argument on this issue and held that the failure to raise this defense had not been malpractice because it would not have been a viable defense given the circumstances of the case. Mr. Reed appeals from the judgment of the circuit court insofar as it pertains to counsel's failure to assert grandfathering as a defense.[13]

## II. STANDARD OF REVIEW

---

In light of the foregoing, the Court FINDS that there is no genuine issue of material fact, and defendant is entitled to judgment as a matter of law….

[11] Apparently, the civil action against Mr. Phillips was filed in Monongalia County, rather than Randolph County where the underlying litigation occurred, because his office was in Morgantown.

[12] Current counsel for Mr. Reed was hired after this complaint was filed. The attorney who filed the complaint against Mr. Phillips is not involved in this appeal.

[13] The circuit court also found that Mr. Phillips's failure to file an appeal was not malpractice because his contract with Mr. Reed did not require him to do so. Mr. Reed has not raised this ruling as an issue on appeal.

8

Appellate review of a circuit court's order granting a motion for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting its de novo review, this Court is obligated to apply the same standard for granting summary judgment that was applied by the trial court, namely, that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

## III. DISCUSSION

In deciding the motion for summary judgment, the circuit court concluded that Mr. Phillips was not negligent in failing to raise grandfathering because it was not a viable defense given the facts of this case.[14] Mr. Reed argues on appeal that grandfathering *was* a viable legal defense,[15] asserting that:

---

[14] Of course, no one is required to assert a frivolous defense. In fact, there are ethical and professional duties to refrain from raising defenses which have no merit.

[15] Even if Mr. Reed established that grandfathering was a viable defense in this case, in order to prevail against his former counsel, he would still have to establish that the standard of care required Mr. Phillips to raise the defense, and that the failure to do so proximately caused the unfavorable result for Mr. Phillips. Defense counsel is not necessarily required in every case to raise every possible defense.

(a) his use of the subject property was lawful under the 1988 Litter Ordinance because it was necessary to the operation of his business;

(b) his use was grandfathered under the 2007 Litter Ordinance despite the absence of grandfathering language in the ordinance because it was a non-conforming use under *McFillan v. Berkeley Cnty. Plan. Comm'n*, 190 W. Va. 458, 438 S.E.2d 801 (1993); and

(c) his use was further grandfathered under the 2017 Ordinance adopting the IPMC because it was a lawful use prior to the adoption of the IPMC.

We find it unnecessary to address whether Mr. Reed's usage of the property was necessary to the operation of his business, and therefore lawful, under the 1988 Litter Ordinance, because such use was not grandfathered when the 2007 Litter Ordinance was passed. Thus, it was not a lawful use that could be grandfathered when the IPMC was adopted in 2017.

Although acknowledging that the 2007 Litter Ordinance did not contain a grandfather clause, Mr. Reed argues that *McFillan* recognized a general doctrine of nonconforming use in land use cases which applies even when an ordinance does not contain a grandfather clause.[16] *McFillan* was a zoning case which involved subdivision

---

[16] Relying on *Bittinger v. Corp. of Bolivar*, 183 W. Va. 310, 395 S.E.2d 554 (1990), Mr. Reed also argues that the 2007 Litter Ordinance did not repeal the 1988 Litter Ordinance. In *Bittinger*, the court held that an ordinance could only be repealed by another ordinance or an instrument of equal dignity. *Bittinger* does not help Mr. Reed because we are dealing in this case with two ordinances, clearly instruments of equal dignity.

regulations and the planned expansion of a mobile home park which existed prior to the passage of a regulation requiring each individual mobile home lot to contain at least 5000 square feet. As the *McFillan* court explained in Syllabus Point 3 of its opinion:

> A non-conforming use is a use which, although it does not conform with existing zoning regulations, existed lawfully prior to the enactment of the zoning regulations. These uses are permitted to continue, although technically in violation of the current zoning regulations, until they are abandoned. An exception of this kind is commonly referred to as a 'grandfather' exception.

"A nonconforming use allows the owner of property to avoid conforming to a land-use regulation that [affects] his property." *Id*. at Syllabus Point 4, in part.

The regulations at issue in *McFillan* (like the 2007 Litter Ordinance in this case) did "not contain specific language exempting a nonconforming use," but the court acknowledged that "[i]n West Virginia we have statutorily recognized a nonconforming use, and we have mandated that a nonconforming use cannot be prohibited if the purpose of the use remains the same after the ordinance is enacted. W. Va. Code, 8–24–50 [1984]." *Id*. at 463, 438 S.E.2d at 806 (internal quotation marks omitted). West Virginia Code § 8-24-50 (1984), the statutory grandfather provision involved in *McFillan,* provided in pertinent part that:

> Such zoning ordinance or ordinances shall not prohibit the continuance of the use of any land, building or structure for the purpose for which such land, building or structure is used at the time such ordinance or ordinances take effect, but any alteration or addition to any land or any alteration, addition or

11

replacement of or to any existing building or structure for the purpose of carrying on any use prohibited under the zoning rules and regulations applicable to the district may be prohibited[.]

Although the language in § 8-24-50[17] preserving preexisting uses spoke of nonconforming use in terms of zoning ordinances, the *McFillan* opinion used arguably broader language, stating that "we believe the broad scope of land-use regulations authorized in W. Va. Code, 8–24–1, *et seq.,* allows a nonconforming use exemption enacted thereunder to apply to **any regulation that restricts the use of land**. In the present case, we deal with subdivision regulations enacted under W. Va. Code, 8–24–28, *et seq.*" *Id*. at 463, 438 S.E.2d at 806 (Emphasis added); *see also id*. at Syllabus Point 2 ("The broad scope of land-use regulations authorized in W. Va. Code, 8–24–1, *et seq.,* allows a nonconforming use exemption enacted thereunder to apply to **any regulation that restricts the use of land**.") (Emphasis added). Mr. Reed argues that the language in *McFillan* referring to "any regulation that restricts the use of land" means that his use of the subject property was grandfathered regardless of whether the 2007 Litter Ordinance contained a grandfather clause of its own.

Initially, we note that the 2007 Litter Ordinance did not prevent Mr. Reed from using his property for a car repair business. More importantly, cases decided after

---

[17] West Virginia Code 8-25-50 was repealed in 2004. Language preserving lawful preexisting uses when new zoning laws are passed is now found at West Virginia Code § 8A-7-10(c) (2022).

12

*McFillan* make it clear that not every ordinance or regulation which affects land use is subject to statutory grandfathering. Post-*McFillan* cases draw a distinction between ordinances which are passed pursuant to a local government's zoning authority and ordinances which are passed under other more general grants of authority to promote public health and safety.[18]

For example, in *Weyer v. Wood Cnty. Comm'n*, No. 14-1167, 2015 WL 6955137 (W. Va. Nov. 6, 2015) (memorandum decision), the court addressed whether a floodplain ordinance which required mobile homes that were installed or substantially improved to be elevated two feet above Base Flood Elevation was subject to the statutory grandfathering provision for zoning ordinances contained in West Virginia Code 8A-7-10.[19] The court held that it did not, relying in part on the fact that the floodplain ordinance

---

[18] "Although zoning ordinances are enacted under a municipality's police power, all ordinances enacted under the police power are not zoning ordinances." 101A C.J.S. *Zoning and Land Planning* § 8 Westlaw, (database updated December 2025).

[19] This section provides:

(a) After enactment of a zoning ordinance by a municipality or county, all subsequent land development must be done in accordance with the provisions of the zoning ordinance.
* * * *
(c) Land, buildings or structures in use when a zoning ordinance is enacted can continue the same use and such use cannot be prohibited by the zoning ordinance so long as the use of the land, buildings or structures is maintained, and no zoning ordinance may prohibit alterations or additions to or replacement of buildings or structures owned by any farm, industry or manufacturer, or the use of land presently owned by any farm, industry or manufacturer but not used for agricultural, industrial or manufacturing purposes, or the use or acquisition of additional land which may be required

was not a zoning ordinance passed pursuant to the statutory scheme controlling zoning and

planning. As the court explained:

> Petitioners contend that, because they depended on the zoning laws and floodplain ordinances in effect when the property was purchased, it is contrary to West Virginia Code § 8A–7–10 to require existing mobile home lots to comply with the Ordinance as revised in 2007. We disagree. Petitioners' argument fails because the Ordinance is not a zoning ordinance to which the non-conforming use "grandfather" exception applies. The Ordinance was adopted pursuant to West Virginia Code § 7–1–3v, which authorizes county commissions to enact floodplain management plans to comply with the requirements of the National Flood Insurance Act and related state and federal programs. This provision allows for freestanding floodplain management plans separate and apart from general land use regulations, such as those contemplated in West Virginia Code §§ 8A–7–1 through –13. This distinction is important because the non-conforming use or "grandfather" exception is a land-use doctrine, which is inapplicable to the Ordinance at issue here.

*Id.* at *4.

In *McClure v. City of Hurricane*, 227 W. Va. 482, 711 S.E.2d 552 (2010), a

property developer brought a declaratory judgment action against a city and sanitary

stormwater board seeking a declaration that a stormwater management and erosion control

ordinance did not apply to its development of a residential subdivision. The circuit court

---

for the protection, continuing development or expansion of any agricultural, industrial or manufacturing operation of any present or future satellite agricultural, industrial or manufacturing use. A zoning ordinance may provide for the enlargement or extension of a nonconforming use, or the change from one nonconforming use to another.

14

held that the Appellees were grandfathered from complying with the stormwater ordinance, relying on *H.R.D.E., Inc. v. Zoning Officer of the City of Romney,* 189 W. Va. 283, 430 S.E.2d 341 (1993), even though *H.R.D.E.* was a zoning case. *Id*. at 488, 711 S.E.2d at 558 (footnotes omitted). In holding that grandfathering was inapplicable, the Supreme Court of Appeals of West Virginia ("SCAWV") reasoned in part that:

> The reliance by the circuit court on this Court's decision in *H.R.D.E.* was erroneous. The decision in *H.R.D.E.* dealt with a nonconforming use, a concept which is part of the law of zoning. *H.R.D.E.,* 189 W.Va. at 286, 430 S.E.2d at 344 ("A nonconforming use is '[a] use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated[.]' 1 Robert M. Anderson, *American Law of Zoning* 3d, § 6.01, at 446 (1986)."). The applicability of the instant ordinance to the new construction in the Appellees' subdivision is not analogous to nonconforming use in a zoning case. The subject ordinance was not enacted as part of a comprehensive plan and did not change or alter the character or use of the Appellees' property.

*Id*. at 489, 711 S.E.2d at 559.

Also instructive, although it does not involve nonconforming use, is *Harrison v. Town of Eleanor*, 191 W. Va. 611, 447 S.E.2d 546 (1994), which involved an ordinance requiring 20-foot setbacks, and addressed the question of whether the ordinance in question was a zoning ordinance or a building ordinance, a question that determined the applicable notice requirements. After determining that the nature of the ordinance was a legal question to be determined by the court, rather than by a jury, the SCAWV held that

the ordinance was a building ordinance enacted under W. Va. Code § 8-12-13(a)(1) rather than a zoning ordinance enacted pursuant to W. Va. Code § 8-24-39. In reaching this conclusion, the SCAWV distinguished between building and zoning codes, as set forth in Syllabus Points 6 and 7:

> 6. "Zoning is concerned with whether a certain area of a community may be used for a particular purpose...." Syl. Pt. 1, in part, *Kaufman v. Planning & Zoning Comm'n,* 171 W.Va. 174, 298 S.E.2d 148 (1982).

> 7. A building ordinance enacted pursuant to West Virginia Code § 8–12–13 (1990) involves how the use of any given piece of property is undertaken, while a zoning ordinance enacted pursuant to West Virginia Code § 8–24–39 (1990) concerns whether a certain piece of property may be used for a particular purpose.

*Id*. at 613, 447 S.E.2d at 548.

In the case at bar, the 2007 Litter Ordinance was a litter and/or property management ordinance, passed pursuant to the town's statutory powers to control the accumulation of trash and refuse,[20] rather than its statutory powers to zone and plan.[21]

---

[20] West Virginia Code § 8-12-5(10) (2002) authorized municipalities "[t]o prohibit the accumulation and require the disposal of garbage, refuse, debris, wastes, ashes, trash and other similar accumulations whether on private or public property[.]" More generally, West Virginia Code § 8-12-5(23) (2002) authorized municipalities "[t]o provide for the elimination of hazards to public health and safety and to abate or cause to be abated anything which in the opinion of a majority of the governing body is a public nuisance[.]" Significantly, the 2007 Litter Ordinance defined litter as any waste which "tends to create a danger to public health, safety, and welfare or to impair the environment of the people of the city."

[21] West Virginia Code § 8A-7-1 (2004) authorizes municipalities to regulate land use through zoning ordinances.

16

Nothing in the record indicates that it was enacted as part of a comprehensive plan for community development under the zoning statutes. The ordinance does not regulate *whether* Mr. Reed's property may be used for purposes of a car repair business. Rather, it controls *how* he operates his business and the *condition* of his property, specifically, whether he may accumulate visible litter, including inoperable vehicles and car parts.[22] Because the 2007 Litter Ordinance was not a zoning or land use ordinance, the statutory grandfathering provision for nonconforming uses did not apply. *See St. Charles County, Mo. v. St. Charles Sign & Electric, Inc*., 237 S.W.3d 272, 276-77 (Mo. Ct. App. 2007) (holding that an ordinance requiring fencing around scrap and junk stored outdoors was not a zoning ordinance subject to the nonconforming use doctrine).

Reed argues that his use of the subject property was lawful under the 1988 Litter Ordinance and the 2007 Litter Ordinance, and thus subject to the grandfathering provision of the 2017 Ordinance which adopted the IPMC, because he was never cited or fined for noncompliance with those litter ordinances. The fact that the Town may not have issued a previous notice of violation or fined him, however, does not mean that his usage was lawful under the litter ordinances. It simply means that the town, for whatever reason, chose not to pursue its remedies against him. He was repeatedly warned by the Town's

---

[22] As the circuit court indicated in its third finding of fact: "The Town of Beverly has never indicated to the Plaintiff that he could not operate his business at its current location. However, since at least 2006, the Town of Beverly has taken issue with the condition of the property, including but not limited to the presence of unlicensed and/or inoperable vehicles located thereon."

17

attorney that he was in violation of the applicable ordinances, and it appears that he may have made some efforts in the past to correct at least some of the conditions on his property. For all we know, he may have done just enough to keep the Town from pursuing further action against him until the Town sent the notice of violations. In any event, the fact that the Town never cited or fined Mr. Reed until it charged him with violations of the IPMC does not establish that he never violated any of the Town's ordinances, i.e., that his conduct was lawful prior to adoption of the IPMC.[23]

In further support of his argument that a genuine issue of material fact existed as to whether he ever violated the litter ordinances, Mr. Reed asserts in one cursory sentence of his initial appellate brief that he "was cited by the Town of Beverly for the same violation in 2022, went to Magistrate Court, took the position that he was 'grandfathered' in; the case was dismissed; and the Town of Beverly never appealed the dismissal." Mr. Reed does not explain why the magistrate case was dismissed, indicate whether the dismissal was with prejudice, or cite anything in the record which supports his

---

[23] The appendix contains a document from the Town of Beverly dated July 11, 2011 (apparently a portion of the minutes from a town council meeting), which states that a business license for the Beverly Marathon was denied because it was in violation of the property maintenance code. Mr. Reed argues that his business never operated without a business license and, therefore, there was a genuine issue of material fact precluding summary judgment. Respondent Phillips counters that this argument was never made or considered by the trial court. Even if this argument was made below, it is not compelling because, as noted above, the fact that the Town may not have pursued its remedies against Mr. Reed does not mean that his usage was allowed by the Town's litter ordinances and therefore lawful.

position that the magistrate court made any rulings about grandfathering. Furthermore, the alleged order from magistrate court was not submitted for our review as part of the appendix. Consequently, pursuant to Rule 10 of the Rules of Appellate Procedure, we do not consider the alleged magistrate ruling in our analysis. *See Mulla v. Ball*, No. 25-ICA-261, 2026 WL 291981, at *2 (W. Va. Ct. App. Feb. 3, 2026) (memorandum decision) (quoting *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011)) ("A skeletal argument, really nothing more than an assertion, does not preserve a claim."); *Mansberger v. City of Morgantown*, No. 19-0226, 2020 WL 2042967, at *2 (W. Va. April 28, 2020) (memorandum decision) (citing Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, the court disregarded an argument that the petitioner was charged with a violation of the wrong section of the municipal code when the citation, "the charging document," was not included in the appendix on appeal).

## IV.  CONCLUSION

We affirm the October 18, 2024, order of the circuit court finding that Mr. Phillips did not commit legal malpractice when he failed to raise grandfathering as a defense to a notice of violation of the 2015 IPMC based on his storage of unlicensed and inoperative vehicles on his property which were not kept in suitably enclosed areas. Although the ordinance adopting the IPMC contained language preserving preexisting lawful uses, Mr. Reed's use of his property was neither allowed nor grandfathered under the 2007 Litter Ordinance, regardless of whether it was permissible under the 1988 Litter

19

Ordinance. Thus, it was not lawful when the IPMC was adopted. Accordingly, the circuit court did not err when it held that grandfathering based on nonconforming use was not a viable defense and therefore Mr. Phillips did not commit malpractice as a matter of law.

Affirmed.